STATE v. WILLIAM MURRAY.[1]

March 7, 1947.

No. 34,305.

*A. D. Bornemann,* for appellant.

*J. A. A. Burnquist,* Attorney General, *Ralph A. Stone,* Assistant

[1]Reported in 26 N. W. (2d) 364.

Attorney General, and *Lyman A. Brink,* County Attorney, for the State.

JULIUS J. OLSON, JUSTICE.

Defendant was charged with the offense of driving his automobile upon a public highway in Kittson county while under the influence of intoxicating liquor in violation of Minn. St. 1945, § 169.12.[2] The jury having returned a verdict of guilty and defendant's alternative motion for an order granting judgment in his behalf notwithstanding the verdict or, if that be denied, for a new trial having been denied, he appeals.

The facts upon which the verdict rests may be thus summarized: During the evening of March 24, 1945, at about 8 or 8:30 o'clock, defendant was at the village of Hallock, the county seat of Kittson county. There was evidence to show that his condition was such that he was unable to get his car in gear and that this was directly due to his intoxicated condition.

The village of Humbolt is some 14 miles north of Hallock. State highway No. 75 runs through both villages. Defendant's farm home is located to the southwest of Humbolt, but because of his condition he failed to take the road leading to his farm and followed instead the highway to and beyond Humbolt. Later that evening, his car was found in the road ditch about a mile north of Humbolt. His explanation of the situation, as related by several witnesses, is that he failed to turn onto the road leading to his farm and did not discover his error until he had gone beyond Humbolt. Thus, belatedly, he concluded that the thing for him to do was to turn around and go back. It was in the performance of this job that his car was backed into the ditch.

The same evening, the complaining witness, Ree Schoenenberger, had driven his car to Humbolt at about nine o'clock and parked it in front of a store. Upon returning to his car about an hour later, he found that the right front fender had been bent and damaged and that a metal strip from the car with which it had come in contact

---

[2]See, M. S. A. § 169.12, and cf. Mason St. 1941 Supp. § 2720-176.

was lying alongside of his car. Since his car was headed south, the assumption is that the car which damaged it was headed north. Schoenenberger called a garageman, and after they had straightened the fender of the Schoenenberger car so as to make it serviceable, they drove north. About a mile north of the village they found defendant's car in the road ditch. Upon examination of defendant's car, they found that its right front fender had been bent and damaged and that the metal strip found by Schoenenberger came from defendant's car. Shortly thereafter defendant appeared on the scene. He staggered as he walked; so much so, in fact, that he fell into the ditch. During the course of the evening and the next morning, defendant admitted to several persons that while driving through Humbolt that evening he had collided with another car but that he thought no harm had been done.

The sheriff testified as follows to a conversation he had with defendant at the place where the latter's car was in the ditch:

"Well, I asked him for his driver's license number and I asked him if he was the driver and he said, 'Yes,' and I asked him if he was alone; he said, 'Yes,' so I asked him how he happened to get into the ditch that way and he says, 'I seen that I was past Humbolt and I went to turn around and I backed into the ditch'; and I says, 'You must have been drunk.' He says, 'I'm not denying anything'; and I says, 'Did you know that you hit this man's car in Humbolt?' He says, 'I'm not denying anything.' "

Another witness who heard this conversation testified that defendant said to the sheriff, "I hope you ain't as hard on me this time as you was the other time." Testimony was given by another witness as follows:

"Q. Was anything more said that you can recall? Did he [defendant] tell you where he was going?

"A. Yes, he said he was going home and missed the road and went too far north on 75—he got too far north and when he got through Humbolt he noticed he was on the wrong road and he tried to turn around and backed in the ditch."

■ There is much other testimony of like import. From the facts recited and from the whole record, we unhesitatingly conclude that defendant was under the influence of intoxicating liquor at the time in question. A further recital of details seems unnecessary. Not only was he under the influence of intoxicating liquor, he was, in plain language, *drunk*.

■ In his brief defendant says:

"The court correctly charged the jury as follows:

" 'In this case there are two principal elements of the crime which must be proven to you by the State beyond reasonable doubt. The first of these is that the State must prove to you beyond reasonable doubt that the defendant was under the influence of intoxicating liquor at the time charged in the complaint; and, secondly, the State must prove to you that while so under the influence of intoxicating liquor the defendant drove a vehicle in this state—and in this case, in the Village of Humbolt.' "

Defendant's principal argument is that the evidence is insufficient to show "that the defendant moved his car or operated it" from the time he was at Hallock until his car was discovered north of Humbolt. In short, that there is "an utter failure on the part of the State to prove beyond reasonable doubt that defendant operated his car while in an intoxicated condition." As we have already said, his intoxicated condition is thoroughly established. And the fact that he, and he alone, drove this car upon the highway in question from the time of leaving Hallock until the car was found in the road ditch north of Humbolt is a fact established beyond any reasonable doubt. There is no suggestion of anyone else having so much as touched his car during the time mentioned. Defendant did not testify, a privilege obviously his, but he cannot now complain that the jury believed the evidence upon which the verdict is founded.

■ Misconduct on the part of the county attorney is predicated upon the following question and answer (Record p. 42):

"Q. Who paid the damage on your car?

"A. Murray's insurance company.

"Mr. Bornemann: Just a moment; that is objected to as clearly prejudicial and incompetent.

"The Court: Objection sustained."

Nothing further appears in the record with respect to this so-called misconduct. There was no motion to strike, nor any request that the jury be instructed to disregard the answer; in fact, from then on in the course of the trial nothing further was said or done about it. To say now that the question and answer were so prejudicial as to require a new trial seems to be a rather farfetched afterthought. What was there about the question itself that can be said to be *wrong?* If defendant had paid Schoenenberger's damages as a matter of private settlement or adjustment of what was purely a civil liability, can it be said that proof of that fact would be prejudicial in this proceeding? And the fact that defendant did not seriously so regard it is shown by the subsequent proceedings, all of which indicate that the matter was not deemed of any particular importance. Furthermore, the court took pains to confine the jury's duties in its consideration of the issues to limited and definite standards. In addition to the portion of the charge already quoted, the court said:

"This is not an action to recover damages for injuries to the automobile of the complaining witness * * *, but it is a prosecution against the defendant for having committed a crime, as I have explained it to you; and the mere happening of an accident is no proof of guilt. Evidence showing that there was an accident or that the cars collided in the village of Humbolt and the locations of the cars has been submitted to you and *should be considered by you* together with the other evidence in the case *only for the purpose of determining whether the defendant drove a motor vehicle while under the influence of intoxicating liquor."* (Italics supplied.)

We fail to see anything in the circumstances related which in any way can be said to be harmful or prejudicial to defendant.

What has been said disposes of the case on its merits. The record abundantly shows that defendant has had a fair and impartial trial and that the verdict is founded upon adequate proof. Defendant was

represented by counsel of long experience. He is a man of recognized ability, who has served many years as county attorney of Kittson county, and, as such, he was thoroughly competent to safeguard all rights of his client. This duty he has performed ably and well. But the jury also had a solemn duty to perform. Neither defendant nor his counsel should complain about the result determined by the triers of fact, who discharged their duties well and faithfully.

There are other claimed errors, but a careful examination of the record convinces us that these do not require special treatment.

Order affirmed.

[1]Reported in 26 N. W. (2d) 363.